OPINION OF THE COURT
Chief Judge Cooke.
The question presented upon this appeal is whether, pursuant to CPL 20.40 (subd 2, par [c]), Bronx County had territorial jurisdiction to indict and convict defendant of assault in the second degree and assault in the third degree arising out of vicious beatings he inflicted in Rockland County.
The events leading up to this prosecution had their inception in April, 1974. At that time, Harold Mazza, a person who had previously been involved in a number of illicit enterprises, joined two others in organizing a partnership known as the McLean Painting Company in the City of Yonkers, Westchester County. Soon after formation, the firm was engaged as a subcontractor at a construction site in Westchester. Because the general contractor was tardy in making progress payments to its subcontractors, Mazza soon encountered difficulty meeting his rather substantial weekly payroll. His unsavory past precluded the use of traditional banking channels to secure interim financing, compelling Mazza to resort to alternative sources of financing to meet his weekly obligations.
An acquaintance, Paul Zerbo, sympathized with Mazza’s plight and informed him that defendant would be able to provide him with a short-term loan enabling him to meet his payroll. At a meeting in The Bronx, defendant offered Mazza a $15,000 loan, which Mazza was to repay at a rate of $750 per *74 week until $18,000 was returned to Fea. Defendant stated that either he or an associate would collect the weekly installments at Mazza’s Yonkers office. Four payments were made when Mazza again found himself in need of more funds to meet the company payroll. A new $10,000 loan was arranged in The Bronx under the condition that Mazza would pay $200 per week interest on the additional sum until the entire principal was repaid. Defendant again informed Mazza that he would collect the weekly payments at his Yonkers office but if no one arrived by the close of business Friday, Mazza was to bring the installment to defendant at the Rosedale bar in Bronx County.
In the months that followed, 9 or 10 weekly installments were made, approximately half of them in The Bronx. Two or three of these payments were made by checks drawn on insufficient funds. By November, 1974, McLean Painting was in economic extremis and unable to meet any of its obligations, including those to defendant. Apparently fearful of the consequences of default, Mazza absented himself from his Yonkers office for the next three months. During that period, defendant asked Zerbo to relay a message to Mazza that defendant was looking for him. Defendant finally located Mazza on February 3, 1975.
That morning, as Mazza and Zerbo arrived at a construction site in Westchester County, they noticed defendant and an associate waiting for them. The pair were intercepted and ordered to follow defendant’s car over the Tappan Zee Bridge into Rockland County, where Mazza and Zerbo were forced at gunpoint to enter a deserted bar. Once inside, the two were savagely beaten by defendant and his associate. At various intervals, Mazza was informed in most forceful terms that the consequences would be even greater should he continue to fail to meet his obligations in the future.
An ongoing investigation by the Bronx County District Attorney’s office into defendant’s activities soon revealed his role in the Rockland County assaults. Both Mazza and Zerbo agreed to co-operate and this prosecution resulted. The defendant was subsequently indicted for the assaults against Mazza and Zerbo occurring in Rockland County as well as a separate assault against a different victim in Bronx County.
During the course of trial, defendant moved that those counts relating to the Rockland County assaults be dismissed on the ground that Bronx County had no territorial jurisdic *75 tion over the transactions. Although expressing grave doubt over the power of Bronx County to prosecute defendant for assaults allegedly committed outside that county’s borders, the court reluctantly agreed to charge the jury that, to convict defendant, "they must find the fact that [the assaults were] likely to have a particular effect in Bronx County” beyond a reasonable doubt. Although territorial jurisdiction need not be proved beyond a reasonable doubt (People v Moore, 46 NY2d 1, 6), under no view of the evidence may Bronx County be deemed a proper forum within the meaning of CPL 20.20 (subd 2, par [c]). Therefore, we are constrained to reverse so much of the order of the Appellate Division which affirmed the judgment of conviction relating to the Rockland County assaults and to dismiss the counts of the indictment pertaining to those assaults.
At common law, the power of the sovereign to enact laws proscribing conduct and attaching criminal liability to the commission of the prohibited acts extended only within the confines of its territory. The theory underlying the common-law rule stems from the concept that the accused had a right to be tried by a jury drawn from the neighborhood where the acts giving rise to criminal liability took place (see People v Goldswer, 39 NY2d 656, 659-660). Of necessity, certain exceptions to the early common-law territorial theory of jurisdiction emerged. Thus, in instances where conduct perpetrated outside the jurisdiction was done with the intent to obstruct the governmental affairs of the sovereign and such extraterritorial conduct actually produced that effect, it could prosecute the acts as if actually committed within its borders (see Strassheim v Daily, 221 US 280, 285; Hanks v State, 13 Tex App 289; cf. Restatement 2d, Foreign Relations Law of United States, § 33). This common-law exception to the strict territorial theory of jurisdiction was the precusor of the injured forum and protective jurisdiction sections of the Criminal Procedure Law (see CPL 20.20, subd 2; 20.40, subd 2).
Absent statutory exception, in this State the territorial unit for criminal prosecutions is the county (Matter of Murtagh v Leibowitz, 303 NY 311; People v Hetenyi, 277 App Div 310, affd 301 NY 757). The Legislature has, however, created a number of statutory exceptions to strict territorial principles of geographic jurisdiction (e.g,, CPL 20.20, subd 2, pars [a], [d]; 20.40, subd 2, pars [a], [b] [adopting the objective territorial or injured forum theory of jurisdiction]; see 52 St John’s L Rev *76 137, 162, n 117). Relevant to this case is the adoption of the protective theory of jurisdiction, which is premised on the postulate that the jurisdiction of the State, or one of its counties, may be exercised over conduct outside its geographical borders where such conduct was intended to have a deleterious effect within its territory (see Commission Staff Comment to Proposed CPL 10.20, subd 3, p 41 [now CPL 20.20]; cf. United States v Pizzarusso, 388 F2d 8, 10-11, cert den 392 US 936; Jurisdiction with Respect to Crime, 29 Am J Inter L 435, 543 [Special Supp]).
As presently drafted, the statute adopting the protective theory of county jurisdiction over criminal offenses (CPL 20.40, subd 2, par [c]), is rather limited in scope (see Matter of Steingut v Gold, 42 NY2d 311). The statute provides that a county may prosecute an offense occurring outside its borders when:
"Even though none of the conduct constituting such offense may have occurred within such county:
* * *
“(c) Such conduct * * * was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein”.
The definition of "particular effect” within a county is provided by CPL 20.10 (subd 4): "When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a 'particular effect’ upon such jurisdiction.”
The People maintain that the Rockland County assaults were committed with the intent to produce a materially harmful impact upon the community welfare of Bronx County by compelling Mazza to resume usurious loan payments in The Bronx. However, even assuming that the attacks could be deemed to have been intended to compel payment in Bronx County alone, that conduct would not have the "materially harmful impact” presently contemplated by the statute. Extraterritorial jurisdiction is to be applied only in those limited circumstances where the out-of-jurisdiction conduct is viola *77 tive of a statute intended to protect the integrity of the governmental processes or is harmful to the community as a whole (see Matter of Steingut v Gold, 42 NY2d 311, 317, supra; People v Puig, 85 Misc 2d 228, 233; but see People v Corsino, 91 Misc 2d 46).
For example, an attempt in county B to bribe an executive officer of county A to effectuate a decision favorable to the offeror’s interests in county B, if accomplished, would have a perceptible detrimental impact upon the governmental integrity of county A and would support that county’s exercise of territorial jurisdiction over the bribe offeror. Such conduct would clearly be intended to have a dramatic effect upon the governmental processes of county A (compare Matter of Steingut v Gold, supra). A variation of Professor Denzer’s example (Denzer, Practice Commentary, McKinney’s Cons Law of NY, Book 11 A, CPL 20.40, p 55) aptly illustrates a situation in which a county could assert its protective jurisdiction on the ground that the intended conduct, if brought to its logical conclusion, would have a materially harmful impact upon the community welfare of the county: if a person were to attempt to blow up a dam in Putnam County near the Westchester County line, knowing or intending that his act would cause substantial flooding in Westchester County, either Westchester or Putnam could prosecute the conduct. If the dam were destroyed, Westchester County’s jurisdiction would lie as it would be an injured forum. However, if for some reason the charge did not ignite, Westchester could assert its protective jurisdiction over the transaction, for that theory looks to the intent of the actor rather than the consequences of his act (see, also, 1 Waxner, New York Criminal Practice, par 1.2[3], pp 1-45 to 1-47).
In both of these examples, the particular effect intended by the criminal conduct is to cause a materially harmful impact, not to any particular individual, but rather to the well being of the community as a whole. Moreover, the conduct was intended to impact upon one particular jurisdiction. Thus, the county in which the criminal conduct is intended to result may properly prosecute the actor if only to protect the integrity of its governmental processes or the welfare of the citizens. Here, in contrast, any impact upon Bronx County arising out of the assaults committed in Rockland County is amorphous at best. The result intended to be effected by the assaults was not intended to cause harmful impact upon the commu *78 nity as a whole, but rather only upon the recalcitrant debtor. Indeed, defendant’s sole motivation in beating Mazza was the simple desire to compel repayment of the debt. Whether he was repaid in Bronx County, Westchester County or elsewhere was at most incidental, the place of payment not being a constituent element of the motive. The interest of Bronx County in prosecuting these assaults was nonexistent.
The remaining arguments raised by the defendant have been considered and determined to be without merit.
Accordingly, the order of the Appellate Division should be modified by reversing and vacating the conviction and sentence based upon the Rockland County assaults and dismissing those counts of the indictment pertaining thereto and, as so modified, affirmed.
Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur with Chief Judge Cooke.
Order modified in accordance with the opinion herein, and, as so modified, affirmed.