OPINION OF THE COURT
Duncan S. McNab, J.
Under the above-noted indictment, defendant Ronald Crean stands charged with a single count of grand larceny, second degree. By way of omnibus motion, the defendant now moves for various items of relief, which this court would dispose of as follows:
Motion to Dismiss Indictment as Defective, i.e.. Based On An Alleged Lack of Geographical Jurisdiction in Westchester County.
The single count of grand larceny, second degree, with which defendant is charged, alleges that during the period from July 23, 1980 to November 11, 1980, the defendant, then a duly licensed attorney,[1] kept and converted to his own use the proceeds of a $33,553.12 check issued by the Sullivan County Department of Social Services which the defendant had been hired to collect on behalf of the Mental Retardation Institute (herein referred to as MRI),[2] situated in Westchester County, specifically in Valhalla, New York. Defendant contends that the instant Westchester County *997 indictment is defective for lack of geographical jurisdiction. He maintains that since the check in question was allegedly received in New York County, and then allegedly deposited in and thereafter removed from a New York County bank, that no element of the alleged larceny crime occurred in Westchester and that therefore no larceny indictment can be brought in Westchester County. The essential facts, as they relate to jurisdiction, are not disputed by the Deputy Attorney-General.
Given that none of defendant’s conduct constituting the alleged larceny crime occurred in Westchester County, the question then becomes whether or not the alleged crime can nonetheless still be tried in Westchester under any of the exceptions contained under CPL 20.40 (subd 2). In particular, defendant urges the court not to permit the People to predicate jurisdiction under the “particular effect” exception contained at CPL 20.40 (subd 2, par [c]). While the court would agree with the defendant that the instant case does not fall under the “particular effect” exception contained at CPL 20.40 (subd 2, par [c]), the court would further find that it does fall under the “result offense” exception contained at CPL 20.40 (subd 2, par [a]).
CPL 20.40 provides, in pertinent part:
“A person may be convicted in an appropriate criminal court of a particular county * * * when:
“1. Conduct occurred within such county sufficient to establish:
“(a) An element of such offense; or
“(b) An attempt or a conspiracy to commit such offense; or
“2. Even though none of the conduct constituting such offense may have occurred within such county:
“(a) The offense committed was a result offense and the result occurred in such county; or * * *
“(c) Such conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein.”
*998 The term “particular effect”, within the meaning of the CPL, is defined as follows at CPL 20.10 (subd 4): “ ‘Particular effect of an offense.’ When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a ‘particular effect’ upon such jurisdiction.” (Emphasis added.)
First, with respect to the “particular effect” exception contained at CPL 20.40 (subd 2, par [c]), it is the People’s contention that defendant, by allegedly stealing money from a Westchester-based entity, i.e., MRI, thereby “defrauded persons” within Westchester County so as to confer jursdiction upon Westchester County under the latter prong of the “particular effect” exception. By so arguing, the Deputy Attorney-General would seek to distinguish those cases cited by defendant wherein extraterritorial jurisdiction was found to be lacking absent any showing of a materially harmful impact upon the governmental processes or community welfare of the particular county in question, as opposed to the individual victim. The defendant quite properly draws a similar distinction in the instant case. (See People v Fea, 47 NY2d 70, Bronx County having no jurisdiction over an assault charge arising out of a beating inflicted in Rockland County for the purpose of compelling the victim to repay a usurious loan; Matter of Steingut v Gold, 42 NY2d 311, Kings County having no jurisdiction to indict for corrupt use of position under the Election Law, based on a public official’s alleged promise to assist another in obtaining an appointment to the police department civilian complaint review board in exchange for a campaign contribution obtained in New York County; defendant also relies on People v Brown, 69 Misc 2d 412 [Gates, J.], where Suffolk County was found to be without jurisdiction over the alleged theft of the proceeds of the sale of a house located in Suffolk County where defendant Brown, an attorney, stole said funds from an escrow account he had set up in a New York City bank.) On its face, the facts in Brown do seem to present a striking parallel to *999 the instant case, since the only plausible jurisdictional nexus there, as here, was the situs of the real property. However, it would appear that the precedential value of Brown is somewhat limited insofar as Brown was decided strictly under CPL 20.40 (subd 1, par [a]) based on the fact that none of defendant’s conduct sufficient to establish an element of grand larceny had occurred in Suffolk County, the question of extraterritorial jurisdiction under CPL 20.40 (subd 2) there not being deemed to be applicable.
Also with reference to the question of “materially harmful impact”, the court would refer the parties to Matter of Birnbaum (NYLJ, Jan. 3, 1978, p 11, col 6 [App Div]). There, in upholding the jurisdiction of Nassau County to prosecute petitioner for crimes of offering a false instrument for filing in connection with inflated patient care expenses at the Parkview Nursing Home located in Nassau County, a unanimous Second Department found that “[p]etitioner’s alleged conduct * * * would have had a materially harmful impact on Nassau County, by causing the county to pay to petitioner tax dollars to which he was not entitled.” While it is tempting to find a parallel to Birnbaum in the instant case, both being cases brought by the Deputy Attorney-General in connection with Medicaid funds, there would also appear to be a very real difference — here, the county of situs, i.e., Westchester, cannot be said to be paying out any public moneys, unlike the situation Nassau County found itself in in Birnbaum, since the entire sum of money in the instant case clearly comes from Sullivan County.
In any event, it is the Deputy Attorney-General’s position that the line of cases referred to above, involving that prong of CPL 20.40 (subd 2, par [c]j dealing with material impact on governmental processes or the community welfare of a particular county, are not dispositive here. Rather, the People base their argument on that prong of CPL 20.40 (subd 2, par [c]) relating to the defrauding of “persons”, which the People contend may be satisfied by a showing that one “person” was defrauded, here MRI, as an entity, constituting a person. Certainly there can be little doubt that MRI is a “ ‘[pjerson’ ” within the meaning of subdivision 7 of section 10.00 of the Penal Law. Beyond *1000 that, in support of their construction equating the singular with the plural, the Deputy Attorney-General refers the court to the General Construction Law, where, at section 35, it states that “[w]ords in the singular number include the plural, and in the plural number include the singular.” However, section 110 of that same General Construction Law qualifies the general rule, section 110 providing that: “This chapter is applicable to every statute unless its general object, or the context of the language construed * * * indicate that a different meaning or application was intended from that required to be given by this chapter.”
It is at least arguable that a “different meaning”, i.e., interpreting “defrauding of persons” in the plural only, would be consistent with the interpretation given the “materially harmful impact” prong of CPL 20.40 (subd 2, par [c]) by the cases (see People v Fea, supra; Matter of Steingut v Gold, supra). On the other hand, a contrary argument, founded on notions of public policy, can also be made, particularly in view of the general rule of construction contained at section 5.00 of the Penal Law, i.e., “[t]hé general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.”
Even assuming, arguendo, then that the Deputy Attorney-General cannot fit within either prong of the “particular effect” exception at CPL 20.40 (subd 2, par [c]) there still remains the question (notwithstanding the fact that the theory is not addressed in the People’s answering papers) of whether jurisdiction may be based on the “result offense” exception of CPL 20.40 (subd 2, par [a]). In his Practice Commentary to this particular section, the Honorable Richard G. Denzer provides the following example: “Like its counterpart in the state statute, paragraph (a) herein permits conviction in the ‘result’ county: for example, a conviction of murder in Westchester if the victim died there even though he was shot in Monroe.” (McKinney’s Cons Laws of NY, Book 11A [1971 ed], CPL 20.40, p 55.)
More specifically, the term “result offense” is defined at CPL 20.10 (subd 3), as follows: “When a specific conse *1001 quence, such as the death of the victim in a homicide case, is an element of an offense, the occurrence of such consequence constitutes the ‘result’ of such offense. An offense of which a result is an element is a ‘result offense.’ ”
Intentional murder, of course, as defined at subdivision 1 of section 125.25 of the Penal Law is an obvious example of a “result” offense, since a specific consequence, i.e., causing one’s death, is an actual element of the crime, the elements of which are, simply, “[w]ith intent to cause the death of another person, he causes the death of such person”. By analogy, the crime of larceny would also seem to satisfy the definition of a “result” offense, since larceny essentially consists of an intent to steal combined with the actual wrongful taking, obtaining, or withholding of one’s property. (See Penal Law, § 155.05, subd 1.) Again, a specific consequence, a specific result, i.e., the withholding of a sum of money, is a necessary element of the offense, as alluded to at page two of the People’s answering papers. And here, upon in camera inspection, the Grand Jury minutes do reveal that MRI sustained a monetary loss in the sum alleged as a consequence of defendant’s alleged actions, which loss was ultimately written off by MRI in Westchester County as a bad debt.
In this respect, the crime of larceny can readily be distinguished from those crimes not deemed “result” offenses for lack of a specific consequence as an element. (See People v Puig, 85 Misc 2d 228, 232 [Coon, J.], where the court found the sale and possession of a controlled substance not to be result offenses.) Even more illuminating, perhaps, is the holding of a unanimous Second Department in People v Schlatter (55 AD2d 922). There, for lack of geographical jurisdiction, the court dismissed seven counts of forgery in the second degree, noting first that no element of the crime of forgery had occurred in Nassau County, and secondly, that forgery is not a “result” offense. Referring to the Penal Law definition of forgery contained at section 170.10 of the Penal Law, the court stated (p 922) that “[t]he crime of forgery is complete when the instrument is made or altered with fraudulent intent, and the utterance of the instrument is not necessary”. Significantly, however, the court in Schlatter chose not to dismiss additional counts of *1002 grand larceny but rather sent those counts back for retrial based on other unrelated errors, therein, by necessary implication, drawing a distinction with respect to jurisdiction between the forgery and larceny counts.
Finally, this court can also see a difference between the instant case and the facts presented in Fea {supra, p 78), where the Court of Appeals held that it “was at most incidental” as to where the usurious loan was to be repaid. In short, the loan in question in Fea could have been repaid anywhere. Here, on the other hand, the only place where the loss could have been felt, as a direct consequence of defendant’s extraterritorial conduct, was in Westchester.
Accordingly, then, under CPL 20.40 (subd 2, par [a]), the court would find the necessary geographical jurisdiction to support a Westchester indictment, and defendant’s motion to dismiss is hereby denied. In so holding, the court would find harmless the Deputy Attorney-General’s failure to instruct the Grand Jury on the question of geographical jurisdiction, given the fact that the Grand Jury heard the relatively straightforward and simple facts alluded to above concerning the consequence of defendant’s alleged acts upon MRI. (See Matter of Steingut v Gold, supra, at pp 316-318; People v Banner, 59 AD2d 621; and see People v Moore, 46 NY2d 1 [question of geographical jurisdiction need be proved only by a fair preponderance of the evidence].) The court would also observe that such a holding would serve to highlight why the Legislature saw fit to adopt a “result offense” exception under CPL 20.40 (subd 2, par [a]) in addition to the “particular effect” exception contained at 20.40 (subd 2, par [c]) since the former picks up where the latter, concerned with “consequences * * * not necessarily amounting to a result or element of such offense” (CPL 20.10, subd 4; emphasis added), leaves off.
[Portions of opinion omitted for purposes of publication.]

. The defendant has since been disbarred. (See Matter of Crean, 86 AD2d 107.)

. On January 29,1982, the County of Westchester purchased MRI; however, during the time in question in 1980, it was considered part of the New York Medical College.