OPINION OF THE COURT
Harold J. Rothwax, J.
The defendants have been charged in a 94-count indictment with grand larceny in the second degree (Penal Law, § 155.35); abstraction of bank funds (Banking Law, § 673); and falsification of bank reports (Banking Law, § 672, subd 1) based upon the alleged diversion by the defendants *973 Calandra and Levine, vice-presidents in the commercial loan department of Chase Manhattan Bank, of $18 million in Chase funds to the defendants Freedman and Roseman or to entities under their control. The defendants allegedly attempted to portray unlawful transfers as loan transactions in the bank’s records, or attempted to conceal the transfers altogether from senior bank officials. The indictment is based upon 29 transactions, of which 21 were purported loans made by Calandra and Levine to Freedman, to entities controlled by Freedman or to Freedman surrogates. The remaining transactions include reversals of interest due on several of the loans; substantial overdrafts paid on Freedman’s account; and an unconditional guarantee, by Calandra on behalf of Chase, of a loan by the National Bank of North America (NBNA) to a FreedmanRoseman enterprise. All of these alleged transactions were conducted by Calandra and Levine from a branch office of Chase Manhattan located on Court Street in Brooklyn (Kings County). Calandra was the executive lending officer of Chase’s eastern district and Levine was his subordinate, responsible for a team of lending officers for the Brooklyn-Staten Island area. The loans were generally negotiated by Freedman in person or through a representative, in Brooklyn, or by telephone from Florida. The loan notes were executed in Brooklyn or were executed in blank elsewhere and were sent to Brooklyn for completion. The Freedman and related corporate accounts were maintained with the Brooklyn branch of Chase Manhattan.
The defendants challenge the court’s geographical jurisdiction over these offenses, since the locus of their conduct was primarily in Kings County. (CPL 210.20, subd 1, par [h].) If jurisdiction over these offenses is exclusively in Kings County, then the indictment must, of necessity, be dismissed. (Matter of Steingut v Gold, 42 NY2d 311, 316.) The determination of proper venue is a question of fact, which must be established by a preponderance of the evidence (People v Moore, 46 NY2d 1, 6-7). It is necessary, therefore, to review in some detail the proof before the Grand Jury as to the specific manner in which the transactions alleged in the indictment occurred.
*974 Loans were made by having the customer complete a promissory note which was kept on file at the branch. The loan officer, who approved the loan by countersigning the note, would simultaneously complete a second form (No. 179) entitled common credit input form. Contained in this form was the borrower’s name, address, the amount of the loan, rate of interest, schedule of repayments, and manner in which the loan was to be credited to the borrower. The loan principal could be credited in two ways, either by direct deposit to the borrower’s checking account, or by issuing bank checks in the principal amount. The loan officer’s signature on the 179 form authorized a loan processing clerk to transcribe the information relevant to the loan from the 179 form to a computer input sheet. The computer input sheets were sent, at the end of each business day, to the bank’s central computer operations located at One New York Plaza, in New York County. The information from the input sheets would be entered into the bank’s computer, which would then credit the borrower’s checking account in the amount of the loan. If the loan principal was delivered by check, the loan clerk would issue the check when he received the 179 form. The checks would subsequently be reacquired by Chase from local banks through the New York Clearing House Association, or from other banks through the Federal Reserve System. In either case, Chase would exchange an equivalent dollar amount of the depository bank’s checks for the face value of the Chase checks. Reacquisition took place in New York County. The reacquired checks were then delivered to Chase’s accounting office for debit against Chase holdings.
The 179 form was also used to modify any terms of an original loan, such as the principal amount, interest rate, and frequency of interest payments. The process for modification was the same as for the creation of an original loan. The 179 containing the new or additional information would be completed by the loan officer whose signature authorized a loan clerk to enter the modifications on computer input sheets, subsequently transported to Manhattan and logged into the bank’s computer.
In addition to the 179 form, the loan officer was required to complete a customer profile form (No. 178) which con *975 tained a new borrower’s name, financial circumstances and relationship to any existing borrower. This information, when authenticated by the loan officer’s signature, was transcribed to input sheets and entered into the bank’s central customer information file through the computer terminal in Manhattan. Additional documentation in regard to loans was kept in the credit files maintained at the branch.
Within 45 days of making a loan, the officer who authorized the loan was required to file a report to higher management regarding the -terms of the loan and financial condition of the borrower. Loans in excess of $100,000 but less than $250,000 were reported and reviewed at the district level, which was in Brooklyn. The report of loans in this range was entitled credit authorization report. Loans in excess of $250,000 were reported by means of credit facility reports, filed periodically in the group headquarters of the commercial loan department, in Manhattan, for review by senior management. The purpose of review was to ensure adherence to the bank’s lending policy guidelines at the district level. The credit facility reports were the senior management’s only source of information about the loans.
A document similar to the 179 loan form, entitled new account memorandum, was required to be prepared by the account’s relationship officer whenever a checking account was opened at the branch. The memorandum contained the name and address of authorized signatories, and relationship to any existing accounts. This information, when authenticated by the bank officer’s signature, was entered into the bank’s computerized records in the same manner as information recorded on the 179 form. The branch also maintained signature cards by which to verify the signatures of the authorized signatories.
In the event of an overdraft against a checking account, the relationship officer would receive a computer-issued refer card upon which he would indicate whether the draft should be paid or returned. The officer’s signature authorized the bank’s bookkeeping department in Manhattan, where the cards were sent, to pay or refuse to pay the overdraft and to modify the bank’s records accordingly. If *976 the overdraft were paid, the checking account remained unaffected and the amount of funds unavailable would be entered in the bank’s accounts receivable records.
The loan guarantee was a letter, similar to a letter of credit, drafted by Calandra in Brooklyn. The purpose of this unique document was to assist a Freedman company, R. S. Grist, to obtain a subsidiary mortgage on Florida real estate known as Holiday Isle, in order to repay an original Chase loan used to purchase the Holiday Isle property. A copy of the letter was delivered to the NBNA in Manhattan first for revisions by NBNA counsel in consultation with Calandra by telephone, and subsequently at the closing when the letter was exchanged for the checks representing the principal paid on the mortgage. No copy of the letter was ever filed with Chase’s counsel in Manhattan, as required by bank policy. R. S. Grist defaulted on the mortgage loan to NBNA and NBNA invoked the guarantee by Chase, which Chase honored in the amount of $2.8 million.
LARCENY AND ABSTRACTION
The court has essentially two kinds of geographical jurisdiction: that in which conduct constituting an element or essential result of the crime has occurred within the county (CPL 20.40, subds 1, 2, par [a]; subd 3), and that which is necessary to protect the people and institutions within the county from conduct occurring elsewhere. (CPL 20.40, subd 2, pars [b], [c], [d], [e]; see People v Fea, 47 NY2d 70, 75-76.) There is a third category of jurisdiction, legislatively prescribed, in specific circumstances. (CPL 20.40, subd 4; see People v Moore, 46 NY2d 1, supra.) In determining whether venue is properly in New York County with respect to the various offenses set forth in the indictment, the court has accepted the factual allegations therein on their face, and has not considered whether the allegations establish the offenses charged.
Venue of the larceny and abstraction (Banking Law, § 673) counts is established in New York County based upon the commission, within the county, of an element of the offenses. Twenty-two of the larceny counts relate to loan transactions and one relates to the loan guarantee Calandra made to NBNA. Twenty-one of the abstraction *977 counts relate to loan transactions, five relate to reversals of interest due on loans, one relates to overdrafts paid to balance Freedman’s checking account, and one to the loan guarantee to NBNA.
The loan transactions as framed in the indictment are a species of larceny by embezzlement. (Penal Law, § 155.05.) The bank entrusted control over certain amounts of its money to the defendant officers for a specified purpose, and the officers allegedly converted the money to the unauthorized use and control of their codefendants, with larcenous intent (see People v Meadows, 199 NY 1, 6-7; compare People v Lobel, 298 NY 243; see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 155.45). Conversion is an essential element of larceny by embezzlement (People v Yannett, 49 NY2d 296, 301). Conversion of the money, funds, property or credit of a bank to an authorized use by an officer of the bank is also an essential element of abstraction (Banking Law, § 673), encompassed within the definition of “abstracts or wilfully misapplies” (see United States v Northway, 120 US 327, 332-333; US Code, tit 18, § 656; see, also, United States v Gallagher, 576 F2d 1028, 1044-1046 [construing a parallel Federal statute]). Conversion being an element of proof essential to both crimes, geographical jurisdiction vests in the courts of the county in which the conversion occurred. (CPL 20.40, subd 1, par [a].)
In general, conversion is an unauthorized exercise of dominion or control over property by one who is not the owner, which interferes with and is in defiance of the owner’s possession. (See Meese v Miller, 79 AD2d 237, 242-243.) In the context of larceny, the interference must be to the degree that the owner is deprived altogether of the economic value of his property. (Penal Law, § 155.00, subds 3, 4.) Conversion of the loan principal in the various transactions subject to this indictment occurred in two ways. In regard to loans in which the principal was credited to the purported borrower’s checking account, conversion was accomplished by the computerized transfer of funds from the bank’s control to the borrower’s (see State v Johnson, 109 Kan 239 [transfer on books of bank is a conversion]). In regard to loans in which the principal was *978 paid to the purported borrower by check, conversion was accomplished by the payment of the face amount of the check upon presentation to Chase Manhattan Bank. Money paid upon the check by previous depository banks was not, in fact, the loan principal since it was not the property of Chase Manhattan (see State v Frank, 355 So 2d 912, 916 [La]; State v Smith, 194 La 1015; State v Riley, 151 W Va 364). The majority of jurisdictions are in accord that venue attaches in embezzlement prosecutions in the jurisdiction where the assets of the owner corporation were reduced by the act of embezzlement. (State v Frank, 355 So 2d, supra, at p 916 [La]; State v Johnson, 109 Kan, supra, at p 245; Clark v State, 287 A2d 660, 667 [Del], cert den 409 US 812; compare People v Dryden, 250 NY 154; see Territorial Jurisdiction for Embezzlement, Ann., 80 ALR3d 514, 561, § 18.)
The place of conversion, where the purported borrower ultimately obtained control over money belonging to Chase Manhattan Bank, was, in both transactions, New York County. The borrower’s account was not credited with the loan principal until the officer’s directive to make the loan was entered into the bank’s computerized records in Manhattan. The funds of Chase Manhattan represented by checks issued in the amount of the loan principal were not affected until Chase reacquired the checks, by payment through the Federal Reserve System or Clearing House Association in New York County.
Similar considerations support the venue in New York County of the larceny count based upon the loan guarantee given by Calandra to NBNA. The unauthorized guarantee induced a transfer of funds in Manhattan from Chase to NBNA when the guarantee was honored. No Chase asset was exchanged prior to the said transfer, which was a form of asportation. (Compare United States v Posner, 408 F Supp 1145, 1153; Penal Law, § 155.05, subd 1.) Until the guarantee was honored there was no conversion equivalent to larceny, since the guarantee may have never been invoked. (Compare State v Riley, 151 W Va 364, 386, supra.)
In those instances of abstraction (Banking Law, § 673) based upon reversals of interest due on loans and payments *979 of overdrafts, conversion, in the sense of interference with the bank’s possessory interest in its funds or credit, also occurred in New York County. The reversals of interest due were accomplished by directives, in the 179 form, to change interest schedules from monthly to quarterly deductions against the borrower’s checking account. The directive was carried into effect when entered into the bank’s computer in Manhattan, whereupon any deductions of interest from the borrower’s account were either reversed or were aborted. The bank’s possession of such money as the interest due represented was accordingly curtailed by acts undertaken in Manhattan pursuant to the Brooklyn directive. Payments of overdrafts were made when the refer card directing that the draft be honored was received by the bank’s accounting office in Manhattan. The bank’s credit was affected when the money used to satisfy the draft was deducted, by entries in the bank’s accounting records, from the bank’s general revenue. The exchange of the unauthorized loan guarantee at the Manhattan office of NBNA was a misapplication of Chase Manhattan’s credit (Banking Law, § 673), which physically occurred in New York County
FALSIFICATION OF BANK REPORTS
Falsification of bank reports may be committed either by making a false entry or by willfully omitting to make a true entry in such reports. (Banking Law, § 672, subd 1.) In either event the entry or omission must be that of a bank employee whose intent is to deceive the bank’s officers, examiners, or a public authority in regard to the affairs or condition of the bank. The defendants argue that since, as in the case of forgery, the offense of falsification is complete when the entry is made with the requisite intent, and since all the forms at issue were completed in Kings County, no element of the offense was committed in New York County (see People v Schlatter, 55 AD2d 922). The defendants argue further that the prosecution has failed to show a sufficient impact upon New York County as a result of the falsifications alleged in the indictment to warrant an exercise of protective jurisdiction. (People v Fea, 47 NY2d, supra, at pp 76-77.)
*980 The court, however, finds a critical distinction between the forgery charges at issue in Schlatter (supra), and the falsification counts here. Of the two types of instruments which may be the subject of forgery (Penal Law, § 170.00, subd 1), the instruments at issue in Schlatter were checks, which “constitute] a symbol or evidence of value, right, privilege or identification”. The instruments at issue in these falsification counts are “book[s], reports] or statements]” (Banking Law, § 672, subd 1) of the bank, which “recite], embod[y], conve[y] or recor[d] information” (see Penal Law, § 170.00, subd 1). This is evident from the statutory requirement that the false entry or willful omission must pertain to the “affairs” or “condition” of the bank in a way that tends to deceive those responsible for the bank’s administration. The statements subject to falsification must be communicative of information necessary to assess the bank’s affairs.
Included within the venue article (CPL art 20) is a provision which deems any “written statement made by a person in one jurisdiction to a person in another jurisdiction by means of * * * any * * * method of communication * * * to be made in each such jurisdiction” (CPL 20.60, subd 1). The documents which are the subject of the falsification counts constituted a “method of communication” among Chase officials in the ordinary course of the bank’s business. All of the documents specified in the indictment were written by or at the direction of the defendant bank officers and the information contained therein authenticated by the officers’ signatures. The information contained in the signature cards, credit file memoranda, credit facility reports, and credit authorization forms was communicated among bank officials on the face of the documents themselves. The information contained in the 179 form, the customer profile, and new account memoranda was transposed, once the authorizing signature on the document was verified, to computer input forms which were physically transported to Manhattan where the information was entered in the bank’s computerized records. The court finds CPL 20.60 (subd 1) equally applicable to those documents which conveyed information on their face, and those documents which contained information subsequently trans *981 lated into computer language. Insofar as the computer-coded information was transcribed verbatim from a written document, it represented that document in another form. The transmittal of the document in its computer input form was a “method of communication” of the written statements contained in the original.
Therefore, CPL 20.60 (subd 1) establishes jurisdiction in New York County insofar as the documents allegedly falsified were used to convey information from a person in Kings County to a person in New York County, since the documents are deemed to have been made in each jurisdiction. The “making” of the falsified document is, of course, an element of the offense (Banking Law, § 672, subd 1; cf. People v Schlatter, supra; CPL 20.40, subd 1, par [a]). Insofar as the falsification charges are based upon omissions, the evidence shows that the information allegedly omitted was required by the form of the documents to be reported. Accordingly, the omissions were a form of misrepresentation integral to the written statements and may also be deemed to have been “made” in New York County for purposes of venue.
This reasoning (CPL 20.60, subd 1) is, of course, inapplicable to any documents which were not communicated from the Kings County branch to the central Manhattan offices of the bank. There was no evidence before the Grand Jury that the signature cards, or credit file memoranda were ever used to convey information outside of the Court Street branch in Kings County. The evidence indicates that the credit files were maintained at the branch and were only reviewed by audits undertaken there. The credit authorization forms completed in regard to loans of less than $250,000 were limited to review at the district level in Brooklyn. Any misrepresentation of information contained in these documents was confined entirely to Kings County. Therefore, the falsification counts based upon these documents are dismissed for lack of sufficient evidence of proper venue. (Counts Nos. 4,12, 35,39, 57, 60, 64, 77.)
Twenty-one of the falsification counts in the indictment are based upon the defendant bank officers’ failure “to file” “in the County of New York and elsewhere” internal bank *982 documents including credit facility reports and a copy of the loan guarantee to NBNA. As previously noted, the court accepts this formulation of the offense as legally sufficient (CPL 200.50, subd 7, par [a]; 210.30, 70.10, subd 1) for the limited purpose of assessing proper venue. Credit facility reports were used to report loans in excess of $500,000 to the senior bank management in the commercial loan department’s headquarters in Manhattan. The reports were to be submitted within 45 days of making the loan and periodically thereafter. When not under review, the reports were kept at the branch offices. The use of the words “failed to file” in these counts is ambiguous at best, since the evidence before the Grand Jury established that the defendants completely failed to create the credit facility reports. The loan guarantee was, of course, created but not submitted to the bank’s counsel for review as required by bank policy.
It is certain, in any event, that the omission “to file” or to make or create a document may not, like the omission to include information in a completed document conveyed from one county to another, constitute a jurisdictional basis under CPL 20.60 (subd 1), since no “oral or written statement” has been “made” between persons in separate jurisdictions. Although the failure to convey information which is required to be reported under specific circumstances, may be regarded as a “method of communication” that such circumstances do not exist, the statute (CPL 20.60, subd 1) must be strictly and literally construed (People v Moore, 46 NY2d, supra, at p 8).
The counts as framed suggest that the defendants failed to perform a duty imposed by law “which duty * * * was required to be or could properly have been performed” in New York County, in which case venue would properly vest here under CPL 20.40 (subd 3). However, what is made criminal by the falsification statute (Banking Law, § 672, subd 1) is not the failure to file documents as required by bank policy, but the failure to make or create documents or to complete statements in an attempt to deceive the bank’s managers. The duty imposed by the statute is “to make * * * true entities] of any material particularly] pertaining to the business of [the bank] in any *983 book, report or statement of [the bank]”. If the credit facility reports had been accurately completed in Brooklyn, but not filed in Manhattan for review as required by bank policy, there would have been no violation of the statute. (See Matter of Murtagh v Leibowitz, 303 NY 311, 317.) The duty to make the credit facility reports arose at the Brooklyn branch when loans of the specified amount were made, and the documents were in fact retained at the Brooklyn branch before and after submission to Manhattan for review. Therefore, jurisdiction under CPL 20.40 (subd 3) would vest exclusively in Kings County. (See People v Scannelli, 49 AD2d 648.)
Moreover, falsification (Banking Law, § 672, subd 1) is not a “result” offense (CPL 20.10, subd 3), the essential consequence of which may be prosecuted in the county where it occurs (CPL 20.40, subd 2, par [a]). Falsification does not require as an element of the offense that any specific consequence occur as a result of the willful misstatements or omissions. Although intent to deceive must be proved, there is no requirement that the bank officers, examiners or public authorities have been deceived in fact. Nor is proof of loss to the bank an element of the offense. (Cf. People v Crean, 115 Misc 2d 996.)
Therefore, the only cogent basis for venue over these falsification counts in New York County is the protective theory of jurisdiction (People v Fea, 47 NY2d, supra, at p 76). Jurisdiction may be invoked under this theory when the extraterritorial criminal conduct produces consequences within the county of prosecution, which are not elements of proof of the crime itself, but which so affect the community welfare or governmental processes of the county that prosecution is justified by the need to protect the county’s residents. The District Attorney of the county seeking to apply the long-arm aspect of criminal jurisdiction must prove to the Grand Jury by a preponderance of evidence that the county meets the criteria of an injured forum: that the extraterritorial conduct was intended to affect the injured county in particular; that the injury to the county was material and subject to proof; and that the injury was not limited to the welfare of a particular person but affected the county’s community as a whole. (Matter of *984 Steingut v Gold, 42 NY2d, supra, at pp 317-318; People v Fea, supra, at p 76.) The court accordingly rejects the suggestion that extraterritorial conduct which defrauds a single person within a county is subject to the county’s criminal jurisdiction, even though the fraud is not an element of the crime (CPL 20.10, subd 4; cf. People v Crean, 115 Misc 2d, supra, at pp 999-1000; see People v Brown, 69 Misc 2d 412). There is no exception in law where the “person” defrauded is a corporation of whatever size (Penal Law, § 10.00, subd 7).
The court is also persuaded that the particular injurious effect upon which the county bases its jurisdictional claim must be pleaded in the indictment. One basis for this conclusion is dicta in Matter of Steingut (42 NY2d, supra, at p 318), in which the court stated in reference to the form of the indictment that “invoking of the extraordinary injured forum jurisdictional statute requires the specification of a * * * concrete and identifiable injury.” This conclusion is supported by close scrutiny of the relevant statutory provisions. CPL 200.50 (subd 5) requires that an indictment recite in each count that the offense “was committed in a designated county”. The essence of protective, or particular effect, jurisdiction is that the conduct constituting the offense has occurred outside of the county of prosecution (CPL 20.10, subd 4; see Matter of Steingut v Gold, supra, at p 317). Therefore, it would appear from an otherwise accurate pleading based upon a protective jurisdictional theory that the courts of the prosecuting county did not have jurisdiction over the offense (CPL 210.25, subd 2), unless the facts upon which jurisdiction rests in the prosecuting county are specifically pleaded. It is, of course, no answer to allege that the offense was “committed in” the prosecuting county when in fact only the injurious but nonelemental consequences occurred there.
The Grand Jury presentation in this case failed to establish that New York County’s general welfare suffered material injury as a result of the defendants’ alleged conduct in failing to file credit facility reports or a copy of the loan guarantee with the Chase Manhattan Bank’s central office. Moreover, those falsification counts based upon the failure to file such documents are inaccurate to the extent *985 they allege that the offense occurred “in the County of New York.” Since the counts fail to set forth a concrete and identifiable injury to the welfare of New York County as a result of the defendants’ extrajurisdictional conduct, the counts are defective (CPL 210.20, subd 1, pars [a], [c]). These counts (Nos. 21, 24, 27, 30, 34, 38, 42, 45, 46, 49, 52, 55, 61, 67, 68, 75, 80, 85, 88, 91 and 94) are accordingly dismissed.
The indictment is sustained except to the extent indicated herein. The foregoing constitutes the opinion, decision and order of the court.