THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WIL-LIAM SEIFERT, Respondent.

Fourth Department, November 15, 1985

**APPEARANCES OF COUNSEL**

*Richard J. Arcara, District Attorney (Jo W. Faber* and *John J. DeFranks* of counsel), for appellant.

*Nelson H. Cosgrove (Judith Blake Manzella* of counsel), for respondent.

## OPINION OF THE COURT

DOERR, J.

On the morning of February 13, 1984, a car belonging to Mark Seifert, defendant's brother, was found burning on a dirt road in a heavily wooded area of Cattaraugus County. Two pools of blood, bone and what appeared to be brain tissue were discovered about 20 feet from the vehicle but no evidence of human tissue was found in the car. Analysis revealed that the blood and brain tissue were of human origin, and the testimony of the medical examiner before the Grand Jury supported the conclusion that a violent death had occurred in that immediate location. Mark Seifert has not been seen or heard from since the morning of February 13, 1984 and his body has never been discovered.

Defendant was indicted by a Grand Jury in Erie County, and charged with one count of murder in the second degree and one count of arson in the third degree.

Defendant moved to dismiss the indictment on the ground that Erie County lacked jurisdiction to prosecute him for a crime that occurred in Cattaraugus County, and, in the alternative, that the evidence before the Grand Jury was insufficient to support the charge because there was no evidence that Mark Seifert had, in fact, been killed.

The court below dismissed the indictment, holding that the People had failed to demonstrate a sufficient jurisdictional basis for prosecution for either murder or arson in Erie County. We agree with the court's conclusion that the People failed to demonstrate a sufficient basis for prosecution of defendant for arson in Erie County, but the court erred in dismissing the murder count.

The People contend that Erie County can assume jurisdiction of this prosecution, in the alternative, under CPL 20.40 (1) (a) or (2) (c), which provide:

"A person may be convicted in an appropriate criminal court of a particular county, of an offense of which the criminal courts of this State have jurisdiction pursuant to section 20.20, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:

"1. Conduct occurred within such county sufficient to establish:

"(a) An element of such offense * * *

"2. Even though none of the conduct constituting such offense may have occurred within such county * * *

"(c) Such conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein" (CPL 20.40 [1] [a]; [2] [c]).

Preliminarily, we note that jurisdiction cannot be sustained in this case under CPL 20.40 (2) (c). The term "particular effect of an offense" as used in the statute is defined in CPL 20.10 (4) as follows: "When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a 'particular effect' upon such jurisdiction" (CPL 20.10 [4]). The Court of Appeals has interpreted this section narrowly, holding that extraterritorial jurisdiction is to be applied only in those limited circumstances where out-of-jurisdiction conduct is violative of a statute intending to protect the integrity of the governmental processes or is harmful to the community as a whole *(People v Fea,* 47 NY2d 70, 77). Here, the impact on Erie County, as urged by the People, is the frustrated prosecution of two misdemeanor charges pending against defendant in Town Justice Court for damages allegedly caused when defendant, in the presence of several family members, used a claw hammer to smash the windows in Mark Seifert's car. The harm that would result from these charges being dropped is to the complainant, particularly in view of Grand Jury testimony that all Mark sought, by pressing these charges, was restitution. Further, the indictment merely asserts, in the most conclusory of terms, that the act was performed with the knowledge "that it would have an adverse effect on judicial proceedings in Erie County" without alleging in any manner the effect the purported crime would have on Erie County. The Court of Appeals has held that, to invoke the extraordinary injured forum jurisdictional statute, the indictment must specify a "concrete and identifiable injury" *(Matter of Steingut v Gold,* 42 NY2d 311, 318). We

conclude that the injured forum jurisdictional statute was not properly invoked in this case.

However, the People have presented evidence that defendant formed the intent to kill Mark Seifert in Erie County sufficient to sustain jurisdiction of the prosecution for murder in the second degree under CPL 20.40 (1) (a). As previously discussed, this section provides that a person may be convicted in a criminal court of a particular county if conduct occurring within such county was sufficient to establish an element of such offense (CPL 20.40 [1] [a]). It is well settled that geographical jurisdiction to prosecute is a question of fact that does not have to be established beyond a reasonable doubt. "All that is required is that jurisdiction can be fairly and reasonably inferred from all the facts and circumstances introduced into evidence" *(Matter of Steingut v Gold,* 42 NY2d 311, 316, *supra; People v Tullo,* 34 NY2d 712, 714; *People v Valero,* 120 Misc 2d 539, 543). If the evidence adduced before the Grand Jury permits a fair and reasonable inference that sufficient conduct occurred within that county to establish an element of the offense charged, jurisdiction will lie in that county. Therefore, if the evidence before the Grand Jury in this case was sufficient to establish that defendant's intent to murder the victim was formulated in Erie County, by a preponderance of the evidence, jurisdiction in Erie County is proper *(People v Tullo, supra,* p 714).

The evidence before the Grand Jury showed that defendant, who lived in Erie County, hated his brother, Mark, and had previously threatened Mark with physical harm. Various witnesses testified that defendant had threatened his brother, and that his hatred had intensified after criminal charges were brought against him. The fact that defendant's intent to kill Mark may have been formed in Erie County in advance of the event can be supported in part by the testimony of an East Aurora gun shop owner, who stated that defendant brought a rifle to him for repair on February 3, 1984, and stated that he definitely wanted the rifle back by February 11, 1984, two days before the discovery of Mark's car and of the human blood, bone and brain tissue. In addition, the proof also showed that defendant devised a plan to lure Mark to an isolated area in Cattaraugus County by asking a waitress at a restaurant frequented by defendant to telephone Mark and entice him with the prospect of a big construction job. Subsequently, upon hearing the news that Mark Seifert's car had been discovered in Cattaraugus County, the waitress voluntarily contacted the police.

She testified that on February 8, 1984, defendant asked her to do a favor for him. He said he had a great job offer to be the contractor for a new development to be built in Cattaraugus County and asked her to call Mark Seifert and ask him to meet with a representative from Tri-State Developers at a site in Cattaraugus County at 10:00 A.M. on February 13, 1984. He told her that he and Mark had a falling out and, if he called Mark about the job, Mark would not be interested, so he wanted her to call and say she was the developer's secretary. Defendant gave the waitress a letter to read to "Mark Seifert Only", which contained explicit directions to get to the site. The directions led to the area where Mark's burned-out car was discovered. Defendant told the caller to keep the matter confidential. The letter indicated that the meeting was set for February 13 at 10:00 A.M., and that the other contractor would be driving a blue van. The waitress was successful in reaching Mark on February 11, 1984. She read the letter to him and he said he would come. She called the defendant that day to tell him she made the call and Mark had agreed to come to the meeting. She called the police when she saw a photograph of Mark Seifert on the news on February 13, stating "they said he was missing, and they gave the area, and as soon as they gave where it was, I knew I sent him there."

Testimony before the Grand Jury further discloses that Mark was last seen at about 9:25 A.M. on February 13, 1984 at a diner estimated to be a 10-minute drive from where his car was found. He told an acquaintance he met at the diner that he was on his way to meet a developer.

We conclude that the preponderance of the evidence before the Grand Jury is sufficient to support the conclusion that defendant formed the intent to kill Mark Seifert in Erie County. Therefore, jurisdiction has been established under CPL 20.40 (1) (a).

The court correctly dismissed the arson charge on jurisdictional grounds. The record is devoid of any proof that defendant formed the intent in Erie County to commit arson. While there was expert testimony that an accelerant was used in the burning of Mark Seifert's car, there was no proof before the Grand Jury that defendant ever possessed or recently purchased an accelerant in Erie County shortly before the burning of Mark's car, or that defendant transported an accelerant from Erie County to Cattaraugus County within the critical time frame. The proof equally supports the conclusion that

defendant spontaneously formed the intent to burn the car at the site itself.

◼ We now turn to defendant's argument that, the jurisdictional impediment aside, the evidence before the Grand Jury was insufficient to support a charge of murder in the second degree or any lesser included offenses (CPL 210.20 [1] [b]). After careful examination of the evidence that was presented to the Grand Jury, we conclude that the proof is sufficient to sustain the murder count.

A person is guilty of murder in the second degree when "[w]ith intent to cause the death of another person, he causes the death of another person" (Penal Law § 125.25 [1]). Therefore, the question presented is whether the evidence before the Grand Jury establishes that: (1) defendant intended to kill Mark Seifert, and (2) defendant killed Mark Seifert.

The test to be applied on a motion to dismiss the indictment for insufficient evidence is whether there has been a clear showing that the evidence before the Grand Jury, if unexplained and uncontradicted, would not warrant a conviction by a trial jury. The evidence must be viewed in the light most favorable to the People *(People v Leonardo,* 89 AD2d 214, 217, *affd* 60 NY2d 683). Essentially, only a prima facie case must be presented *(People v Alaxanian,* 89 AD2d 700).

The evidence before the Grand Jury in the present case, as previously discussed, was sufficient to support the element of intent. Defendant argues that the evidence was insufficient to establish that he killed Mark Seifert. He further argues that the People failed to establish that a murder occurred at all. We disagree. Viewing the evidence in the light most favorable to the People, it was sufficient to establish that Mark Seifert was murdered. The evidence establishes that Mark intended to go to a "meeting" at precisely the location where his car was found. He was last seen by patrons of Mickey's Diner, a 10-minute ride from the site, on February 13, 1984. He showed a patron the directions he had and indicated he was on his way to that spot. He left the diner at about 9:25 A.M. and has not been seen or heard from again. The medical examiner testified that, in his opinion, the blood, bone fragments and brain tissue found at the site of Mark's burned-out car were of human origin. From this evidence, the Grand Jury could have reasonably concluded that a human death had occurred at the site and that the death was violent. A single rifle shot heard by area residents that morning adds to this conclusion. Al-

though Mark's body has never been recovered, this does not bar a finding that he was killed. His car was discovered in an isolated country area where evidence of a human death was found. Mark left his apartment early on the morning of February 13 with a briefcase and $30 in his pocket, leaving all his possessions in his room. He has not contacted any family members with whom he was previously very close, nor has he contacted friends or people who owe him money. The fact of Mark's death can be established by circumstantial evidence *(see, People v Lipsky,* 57 NY2d 560).

There was sufficient evidence presented to the Grand Jury to support the conclusion that defendant was the perpetrator. Family members and friends testified to the strained relationship between the brothers and defendant's previous threats to physically harm Mark. Defendant took a rifle for repair 10 days before the incident, picking it up two days before the incident. Defendant concocted an elaborate scheme to lure Mark to an isolated spot in Cattaraugus County on February 13, 1984 at 10:00 A.M. Defendant could not account for his whereabouts on the morning of February 13, 1984. Fibers found at the scene matched fibers from the rug of defendant's van exactly. There were wood chips in the back of defendant's van which closely resembled those covering the ground at the scene, and testing revealed that a wood chip found in defendant's van was blood-soaked. Defendant's actions after the crime was discovered were highly suspicious; e.g., disappearing for a week, abandoning his blue van in a Tops Supermarket parking lot near his East Aurora home, and his failure to mention Tri-State Developers or the fact that a meeting had been arranged for that day at the site where the car was discovered when he was questioned by police on the evening of February 13, 1984. Those actions all indicate a consciousness of guilt. All the evidence, when viewed against the background of the antagonism defendant harbored against Mark, as well as his prior threats to physically harm Mark, is sufficient to support the charge of second degree murder.

Accordingly, the order should be modified by reinstating that count of the indictment charging defendant with murder in the second degree.

DILLON, P. J., DENMAN, BOOMER and PINE, JJ., concur.

Order unanimously modified, on the law, and, as modified, affirmed, in accordance with opinion by Doerr, J.