OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant herein has been indicted in two counts for the crimes of grand larceny in the second degree (Penal Law § 155.40 [1]) and criminal possession of stolen property in the second degree (Penal Law § 165.52), in that he stole in excess of $50,000 from the Greater New York Insurance Company (GNY), a commercial insurer whose principal offices are in Manhattan. The defendant was a contractual agent of the insurer for the New Jersey region. As part of the defendant’s responsibilities, he collected premium payments from insureds on behalf of the company, which premiums he was obligated under the laws of New Jersey and New York (11 NYCRR 20.3 [b] [1]; NJ Admin Code, tit 11, § 11:1702.1 [a]; § 11:1702.3 [e]) to keep in a trust account until remitted either to the insurer or to the insured. The indictment alleges that the defendant converted to his own use, in excess of $50,000 in premiums paid to him by insureds for policies issued by GNY. The question to be addressed here is the defendant’s claim that the State of New York lacks jurisdiction to prosecute him for the alleged larceny or possession of stolen funds.
Evidence before the Grand Jury established that GNY is a mutually held commercial insurer, with headquarters in Man *21 hattan. The defendant, under contract to sell policies of the company in the State of New Jersey, accepted over $500,000 in premium payments which he failed to remit to GNY in New York. These premiums were paid by check, either by New Jersey enterprises or by premium finance companies. The checks were received by the defendant in New Jersey, deposited in a New Jersey bank, and the funds withdrawn by the defendant in New Jersey. Despite the defendant’s failure to remit the premiums, GNY was bound by law to honor the policies as if the insured had paid the company directly.
When the power of the State to try the defendant is put in issue, the burden is on the prosecution to establish either that the alleged conduct constituting the offense or some consequence of that conduct sufficient to justify an exercise of jurisdiction occurred within this State. The issue of jurisdiction goes to the very essence of the State’s power to prosecute the defendant for these crimes. (People v McLaughlin, 80 NY2d 466, 471 [1992].)
Before the Grand Jury, the People relied upon three theories to support geographical jurisdiction in New York State: that an element of the crime occurred in New York (CPL 20.20 [1] [a]); that the result of the crime occurred in New York (CPL 20.20 [2] [a]); and that the crime had a particular effect upon residents of the State of New York (CPL 20.20 [2] [b])-
The element of the crime of larceny which assertedly occurred in New York (CPL 20.20 [1] [a]) was conversion of the premiums from the control of GNY to the use of the defendant. It is clear from the evidence presented to the Grand Jury, however, that the conversion occurred in New Jersey. In general, conversion is an unauthorized exercise of dominion or control over property by one who is not the owner, which interferes with and is in defiance of the owner’s possession. Conversion as an element of larceny occurs when the defendant "takes, obtains or withholds such property from an owner thereof.” (Penal Law § 155.05 [1].) The property at issue here, in the form of checks representing the premiums, was obtained in the State of New Jersey. The checks were cashed and the funds taken from the account by the defendant in New Jersey. The failure to remit the premiums was an act of withholding, as the People contend, but the act of withholding the money deposited in the trust account in New Jersey, occurred in New Jersey. (See, e.g., Matter of Silvestro v Kavanagh, 98 AD2d 833, 834 [3d Dept 1983] [under venue stat *22 ute].) Unlike People v Calandra (117 Misc 2d 972, 977-978 [Sup Ct, NY County 1983]) a case involving a venue statute (CPL 20.40 [1] [a]) analogous to the statute on which the People rely to establish jurisdiction, the proceeds of the checks representing the premium payments were not drawn from funds on account at GNY’s Manhattan office. In this case, no assets of the insurer located in New York were reduced by the defendant’s act of embezzlement. The defendant simply failed to account to GNY for the funds he received in New Jersey.
The People contend, nonetheless, that the result of the defendant’s conversion of funds in New Jersey was a loss to the insurer in New York, which result is itself a sufficient predicate for jurisdiction (CPL 20.20 [2] [a]). This argument depends for its validity upon the contention that larceny is a "result” crime; which is to say that proof of a particular result is required as an element of the crime of larceny. (CPL 20.10 [3].) The elements of larceny are a taking and an intent permanently to deprive the owner of the thing taken. The first element is established by evidence that "the thief exercised dominion and control over the property for a period of time, however temporary, in a manner wholly inconsistent with the owner’s continued rights (see, People v Olivo, 52 NY2d 309, 318; People v Alamo, 34 NY2d 453, 457-458).” (People v Jennings, 69 NY2d 103, 118 [1986] [emphasis added].) It is clear, in other words, that larceny does not require proof of an actual loss of value to the owner. (People v Olivo, supra; see, e.g., People v Smith, 140 AD2d 259, 260-261 [1st Dept 1988].) It is the second element, the purpose or intent with which the defendant acts, to which evidence of permanence in the defendant’s exercise of dominion or control over the owner’s property relates. It is not necessary, therefore, to establish permanent deprivation as the result of the defendant’s actions. (People v Jennings, supra, at 118-119.) Therefore, any actual loss to the owner as a result of the defendant’s larcenous acts is incidental, not integral, to the definition of the offense. The locus of such a loss cannot serve as the predicate for "result” jurisdiction.
The court is aware of the contrary holding in People v Crean (115 Misc 2d 996, 1000-1002 [Sup Ct, Westchester County 1982]). In Crean, the defendant obtained in New York County a check payable to the victim in Westchester County, deposited the check and withdrew the proceeds from a bank in New York County. The Westchester court held that venue was proper there since Westchester was the situs of the loss to the *23 victim as a result of the larceny. This holding was contrary to a previous holding in People v Brown (69 Misc 2d 412 [Suffolk County Ct 1972]), that Suffolk County did not have venue of the larceny of proceeds of a sale of land located in that county, where the sale was consummated and the proceeds thereof converted in New York County. The court in Crean distinguished Brown on the grounds that Brown was limited to considering whether an element of the offense occurred in Suffolk County. This analysis overlooks the requirement that the result upon which venue is based must be an element of the crime charged. CPL 20.10 (3) states that "[a]n offense of which a result is an element is a 'result offense’.” (Emphasis added.) Moreover, Crean relies on People v Schlatter (55 AD2d 922 [2d Dept 1977]), which does not support the proposition for which it is cited. In Schlatter, the Court held that in the absence of proof that forged checks were made or altered in Nassau County, the deposit of such checks in a Nassau County bank was not a sufficient basis for venue of the forgery offense in Nassau County. The Court noted that forgery is not a result offense, meaning that obtaining money in Nassau County as a result of the forgery would not support venue. The Court remanded the larceny counts for trial in Nassau County, not because larceny is a result offense, but because the checks were deposited in and paid to an account in Nassau County. In other words, property in the form of money was obtained in Nassau County. (See also, People v Zaccaro, 132 AD2d 589, 590 [2d Dept 1987] ["the only conceivable specific consequence or result of the crime of attempted grand larceny in the second degree by extortion is that an element of that crime would be obtaining property by extortion”].) In fact, the result of the larceny in Schlatter was felt in New York County, since the offices of the corporation on whose account the checks were drawn were located in New York County.
The court also is aware of dicta by courts in foreign jurisdictions that for embezzlement, prosecution lies in the State in which the defendant was under a duty to account for the property stolen. (See, Annotation, Territorial Jurisdiction for Embezzlement, 80 ALR3d 514, 523, § 4.) Whatever the validity of this proposition, it clearly is not incorporated into our present jurisdictional statute. Moreover, it appears never to have been the law of this State except where the defendant obtained possession of the property pursuant to a contract of bailment entered into in the place of prosecution. This distinction was recognized in People v Mitchell (49 App Div 531 [4th *24 Dept 1900], affd 168 NY 604) where the Court noted: "If A. and B., in the county of New York, enter into a contract by which B., as the agent of A., is to collect money belonging to A. in the county of Erie and pay it over to him, and B. collects such money in the county of Erie and there forms the intent to and does actually convert such money to his own use, it may well be that a prosecution of B. for the crime of larceny could only be had in the county of Erie, because no act relating to the subject-matter of the larceny was done by B., except in said county; but if, on the other hand, A. should deliver to B. as his agent $5,000 to take to the county of Erie, with which there to pay an indebtedness of A., and B. should take such sum into the county of Erie, and in that county, for the first time, form the intent to steal it, and actually appropriate it to his own use with such intent, we think B. might be indicted for the offense in either New York or Erie county”. (Supra, at 537 [emphasis added].)
Finally, the People argue that the loss to GNY caused by the defendant’s conduct in New Jersey, is an appropriate basis for invoking this State’s protective jurisdiction. (People v Fea, 47 NY2d 70, 75-76 [1979].) The Criminal Procedure Law permits courts of this State to exercise jurisdiction over conduct which occurred outside of the State, where the statute defining the offense is designed to prevent the occurrence of a particular effect within the State and the unlawful conduct was performed with intent that it would have such effect. (CPL 20.20 [2] [b].) The particular effect intended need not amount to an element of the crime, but must either have a materially harmful impact upon the governmental processes or community welfare of this State or must result in the defrauding of persons within the State. (CPL 20.10 [4].) Moreover, the evidence must support the inference that the extra-jurisdictional conduct was undertaken with the intent that it have such an effect. (People v Fea, supra, at 77.)
The defendant’s failure to remit premiums to GNY had no discernable effect whatsoever upon the governmental processes of the State of New York or upon the welfare of the community of the State as a whole. (See, People v Fea, supra, at 77-78.) The People assert that nonetheless the defendant necessarily intended to defraud persons within the jurisdiction. The difficulty with this argument cannot be resolved by simple construction of the term "persons” to include the members of a mutually held company, as the People suggest. (Cf., People v Calandra, supra, 117 Misc 2d, at 984.) The *25 difficulty is that the statute requires evidence that the harm caused was of a sort that would impact upon this State in particular, as distinct from the Nation at large. (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 20.10, at 91.) There was no evidence before the Grand Jury that the members of this mutual company were exclusively or even predominantly citizens of New York State. Moreover, there is no basis for inferring that the defendant intended to defraud the citizens of the State of New York in particular. Finally, as this court held in People v Calandra (supra), the size of the corporate victim cannot determine the propriety of the court’s exercise of jurisdiction. This is simply not the sort of case appropriate to an exercise of protective jurisdiction.
For the foregoing reasons, the indictment is dismissed for failure of proof of territorial jurisdiction within the State of New York.