[814 NE2d 799, 781 NYS2d 492]

In the Matter of SHERMAN F. TAUB et al., Appellants, v HERBERT I. ALTMAN, as Justice of the Supreme Court of the State of New York, et al., Respondents.

Argued June 3, 2004; decided July 1, 2004

## POINTS OF COUNSEL

*Stillman & Friedman, P.C.,* New York City (*Nathaniel Z. Marmur, Charles A. Stillman* and *Peter A. Chavkin* of counsel), for appellants. I. The processing of New York City tax revenue in New York County does not cause a particular effect on that County. (*People v Ribowsky,* 77 NY2d 284; *People v Moore,* 46 NY2d 1; *People v R.,* 160 Misc 2d 142; *Matter of Murphy v Supreme Ct.,* 294 NY 440; *People v Fea,* 47 NY2d 70; *Matter of Steingut v Gold,* 42 NY2d 311; *People v Calandra,* 117 Misc 2d 972; *People v Axentiou,* 158 Misc 2d 19; *People v Hopkins,* 95 Misc 2d 716; *People v Tellerman,* 103 AD2d 786.) II. Appellants did not intend to harm New York County. (*People v R.,* 160 Misc 2d 142; *People v Costa,* 121 Misc 2d 864; *People v Moorehead,* 1 AD3d 639.) III. The indictment does not allege a particular effect on New York County. (*People v Calandra,* 117 Misc 2d 972.)

*Robert M. Morgenthau, District Attorney,* New York City (*Deborah Hickey, AmyJane Rettew* and *Ellen Nachtigall Biben* of

counsel), for respondent. I. As defendants well knew, their tax crimes were likely to have a materially harmful impact on the "governmental processes and community welfare" of New York City by depriving its officials and lawmakers, in New York County, of badly-needed tax revenues. (*People v Axentiou,* 158 Misc 2d 19; *People v Costa,* 121 Misc 2d 864; *People v McLaughlin,* 80 NY2d 466; *People v Greenberg,* 89 NY2d 553; *Matter of Steingut v Gold,* 42 NY2d 311; *People v Ribowsky,* 77 NY2d 284; *People v Moore,* 46 NY2d 1; *People v Kassebaum,* 95 NY2d 611, 532 US 1069; *People v Goldswer,* 39 NY2d 656; *Matter of Murphy v Supreme Ct.,* 294 NY 440.) II. The language of the indictment, as amplified by the bill of particulars, provides adequate notice of the venue theory underlying the tax-related counts. (*Matter of Steingut v Gold,* 42 NY2d 311; *People v Fitzgerald,* 45 NY2d 574; *People v Mackey,* 49 NY2d 274; *People v Iannone,* 45 NY2d 589; *People v Cohen,* 52 NY2d 584; *People v Ray,* 71 NY2d 849; *Matter of State of New York v King,* 36 NY2d 59; *Matter of Veloz v Rothwax,* 65 NY2d 902; *Matter of Pirro v Angiolillo,* 89 NY2d 351; *Matter of Morgenthau v Roberts,* 65 NY2d 749.)

### OPINION OF THE COURT

Chief Judge KAYE.

Defendants Sherman Taub, a Queens County resident, and International Mortgage Servicing Company (IMSC), a New Jersey limited liability company in which Taub owns a half interest, were indicted by a New York County grand jury on 34 counts arising from an alleged scheme to steal millions of dollars through the imposition of allegedly inflated mortgages on Ocean House Center, a Queens County not-for-profit adult home for residents with mental disabilities.

On this appeal, defendants challenge New York County's jurisdiction to prosecute five of these counts, each of which charges defendants with the class E felony of offering a false instrument for filing in the first degree (*see* Penal Law § 175.35); jurisdiction as to the remaining 29 counts—including the class B and C felonies of grand larceny in the first and second degrees—is uncontested. The challenged counts are based on defendants' filing of allegedly false New York State and City tax returns, which did not reflect certain interest income derived from the mortgages held by IMSC on Ocean House.

Inasmuch as the evidence before the grand jury did not establish that defendants' tax returns were either mailed from or received in Manhattan, or that defendants committed any other

act in Manhattan establishing an element of the relevant offenses (*see* CPL 20.40 [1] [a]), the People relied on a theory of "particular effect" jurisdiction in order to establish venue in New York County with respect to these counts.[1] This theory permits a criminal court of a particular county to exercise geographical jurisdiction, or venue, over an offense when—even though none of the conduct constituting the offense occurred within that county—"[s]uch conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein" (CPL 20.40 [2] [c]). Conduct constituting an offense has a "particular effect" upon a county when it "produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of [the] particular [county], or result in the defrauding of persons in such [county]" (CPL 20.10 [4]).

After Supreme Court denied their motion to dismiss the five tax-related counts, made on the ground that jurisdiction did not lie in New York County, defendants brought this CPLR article 78 proceeding, seeking a writ of prohibition to enjoin prosecution of those counts.[2] The Appellate Division denied the petition, concluding that defendants' filing of the allegedly false New York City tax returns had a particular effect on New York County. We disagree, and now reverse.

## I.

At the outset, we emphasize that, in order for prosecutorial jurisdiction to lie in New York County, it is that county—and not the City generally—that must suffer a particular effect as a result of defendants' alleged conduct. The statutory requirement that the conduct have a materially harmful impact may thus be satisfied only by a "concrete and identifiable injury" (*Steingut*, 42 NY2d at 318) to either the county's governmental processes (that is, the executive, legislative or judicial branch of

---

1. "Particular effect" jurisdiction is also known as "injured forum" or "protective" jurisdiction (*see People v Fea*, 47 NY2d 70, 75-77 [1979]; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 20.10, at 110).

2. Prohibition properly lies to address a claim that a court is acting in excess of its geographical jurisdiction (*see Matter of Steingut v Gold*, 42 NY2d 311, 316 [1977]).

government) or the welfare of the county's community. Moreover, to be materially harmful, the impact must be more than minor or incidental, and the conduct must harm "the well being of the community as a whole," not merely a particular individual (*Fea*, 47 NY2d at 77). In addition, because the jurisdiction of the county seeking to prosecute must be established before the grand jury, the type of injury or offense contemplated by the particular effect statute must "be perceptible and of the character and type which can be demonstrated by proof before a Grand Jury" (*Steingut*, 42 NY2d at 317). Because particular effect jurisdiction is to be applied only in "limited circumstances" (*Fea*, 47 NY2d at 76), it has been rarely invoked.

[1] There is no dispute that defendants' conduct, if true, had a materially harmful impact on the governmental processes or community welfare of New York City as a whole. By underreporting income on their New York City tax returns, defendants deprived the City of revenue that would otherwise have been available to meet its financial obligations and fund its governmental operations. Such a loss of revenue, which could lead to cuts in city services or increases in taxes, clearly constitutes a perceptible injury to the City of New York. The question presented, however, is whether the evidence before the grand jury establishes a concrete and identifiable injury suffered specifically by New York *County*. We conclude that it does not.

The People's theory of venue is based on New York County's status as the "seat of City government," and the resultant processing of city income tax revenue in that county. Under this theory, defendants' alleged tax evasion has a particular effect on New York County because New York City taxes are processed and remitted to the City through the Transitional Finance Authority, which is located in New York County,[3] and through city bank accounts also located there. Further, these accounts are controlled by the New York City Commissioner of Finance, whose office is located in New York County, as is the Depart-

---

3. City taxpayers file their city and state tax returns with the State Commissioner of Taxation and Finance in Albany (*see* Tax Law §§ 1312, 652 [a]; 20 NYCRR 152.12). The funds are then remitted to the State Comptroller, also in Albany, who forwards the New York City personal income tax portion of that revenue to the Bond Trustee of the New York City Transitional Finance Authority (TFA), a state public benefit corporation (*see* Public Authorities Law § 2799-aa *et seq.*), who eventually remits any remaining funds not used to pay TFA's bond obligations and operating expenses to the New York City Commissioner of Finance (*see* Tax Law § 1313).

ment of Finance's Bureau of Treasury, which oversees the collection and management of the City's tax revenue.

We conclude, however, that—in a prosecution whose gravamen is the deprivation of revenue from New York City—the location of city agencies and bank accounts is alone insufficient to establish a particular effect on the county in which they happen to be located.

## II.

In *Steingut*, the defendants were indicted for corrupt use of position or authority (*see* former Election Law § 448 [1], [3]), based on a meeting held in Manhattan at which defendants allegedly conspired to corrupt an election to be held in Kings County for city councilmember-at-large. Although Kings County was in some measure affected by this criminal conduct, we held that the mere fact that the allegedly tainted election was to take place in Brooklyn was insufficient to establish particular effect jurisdiction in Kings County. As is readily apparent, the conspiracy to corrupt the election in *Steingut* bore a closer relationship to Kings County, where the election was to take place, than the false filing here bears to New York County.

As we explained in *Steingut*, "If the injured forum jurisdictional statute were to be triggered by the amorphous fact that the voters of the county would be called upon to vote in an election allegedly tainted by criminal activity localized in a single county, then if the election was one for a State-wide office *any* county within the State would be able to assert jurisdiction to indict and prosecute. This is clearly not the intent of the statute" (42 NY2d at 317).

The same concerns exist in the case before us, where the facts proffered to establish particular effect are even more amorphous than those held insufficient in *Steingut*. Permitting New York County to exercise particular effect jurisdiction over an alleged underreporting of income on tax returns based solely on the "processing" of New York City tax revenues in Manhattan would effectively grant the New York County District Attorney jurisdiction throughout New York City to prosecute any income tax or other offense that arguably affects city revenue or expenditures.[4] Such jurisdiction would include prosecution of a Bronx toll taker who embezzles funds, or of a person who steals from a

---

4. If the Transitional Finance Authority were to move uptown to the Bronx, or relocate to another county, jurisdiction for all tax offenses would

city agency in Kings County or vandalizes city property in Queens or Richmond.

Moreover, under the People's theory, the Albany County District Attorney could prosecute any similar crime against the State, no matter where it occurred, including, for example, a Buffalo resident who steals from the till at a local Department of Motor Vehicles office or a driver who evades a toll on Long Island. These scenarios would constitute a vast expansion of the "limited circumstances" in which protective jurisdiction is to be applied (*Fea*, 47 NY2d at 76).

Rather, such "limited circumstances" have typically involved situations in which the injury to the prosecuting county is more particular and readily identifiable. If, for example, a person commits criminal mischief by maliciously blowing up a dam in Putnam County near the Westchester County line, thus flooding some Westchester territory—a result the individual either intends or knows is likely to occur—jurisdiction of the crime will properly lie in Westchester as well as in Putnam (*see Steingut*, 42 NY2d at 317; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 20.40, at 133).

Other examples of perceptible, materially harmful impacts on counties where the offensive conduct has not occurred include the failure of a temporarily released prisoner to return to the county of confinement (*see People v Scannelli*, 49 AD2d 648 [3d Dept 1975]); the violation of an order of protection issued in a particular county, even if the conduct violating the order occurred elsewhere (*see People v Ortega*, 152 Misc 2d 84 [Crim Ct, NY County 1991]); or "an attempt in county *B* to bribe an executive officer of county *A* to effectuate a decision favorable to the offeror's interests in county *B*," because such an attempt, if accomplished, "would have a perceptible detrimental impact upon the governmental integrity of county *A*" (*Fea*, 47 NY2d at 77).

In general, then, particular effect jurisdiction will be sustained when, for example, a defendant's out-of-county conduct has interfered with the county's courts or administration of justice; has exposed a large number of county residents to a specific harm; has caused a physical intrusion upon the county; or has involved the theft of funds from the county itself. But where, as here, the only nexus between the prosecuting county and the harmed political subdivision is the location of offices and ac-

---

presumably follow it there, despite the incidental, tenuous, fortuitous and likely unintended effect of the offense on that county.

counts of the subdivision within the county, the statutory requirements have not been satisfied and the asserted impact is "amorphous at best" (*Fea*, 47 NY2d at 77).

Indeed, the People's theory would permit the type of broad geographical jurisdiction specifically rejected when the statute was enacted. The statutory definition of "particular effect" was added to the original bill after "District Attorneys complained that the proposed statute gave all counties jurisdiction of all crimes and they gave, as an example, that under it any robbery or burglary of a bank in one county would cause an effect on depositors in many counties and the crime would be committed with intent and knowledge that it would have such effect" (*Matter of Steingut v Gold*, 54 AD2d 481, 487 [2d Dept 1976], *affd* 42 NY2d 311 [1977]). Plainly, CPL 20.40 (2) (c) requires a harm *to* the prosecuting county, not a harm felt by a city-wide governmental agency that happens to have an office *in* the county.

That the instant prosecution arises from a violation of Penal Law § 175.35 does not change this result. True, we explained in *Fea* that "[e]xtraterritorial jurisdiction is to be applied only in those limited circumstances where the out-of-jurisdiction conduct is violative of a statute intended to protect the integrity of the governmental processes or is harmful to the community as a whole" (47 NY2d at 76-77 [citations omitted]). And Penal Law § 175.35 provides that "[a] person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he [or she] offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation." Clearly, inasmuch as it criminalizes frauds perpetrated on the State or its political subdivisions, this statute is intended to protect the integrity of governmental processes.

But that truism neither answers the question nor alters the analysis with respect to which political subdivision is defrauded or affected. While it is beyond dispute that defendants' alleged conduct materially harmed the government of New York City, nothing in *Fea*, or in Penal Law § 175.35, abolishes the mandate of CPL 20.40 (2) (c) and 20.10 (4) that the particular effect in

this case be not on the governmental processes of New York City as a whole, but on those of New York County. The evidence proffered here is insufficient to establish that the harm suffered by the City was in any meaningful way peculiar to New York County. The People have identified no New York County government agency, employee or process that is connected in any way to New York City income tax collection, nor have they identified any particular harm to the welfare of New York County or its residents. Rather, all five boroughs and their residents and governments were equally affected by the City's loss of funds and the resultant risk of service cuts or tax increases, and the ministerial act of processing tax revenue cannot alone create a jurisdictional nexus.

Nor is the evidence here sufficient to establish the second statutory requirement for injured forum jurisdiction—that the conduct was performed with intent that it would, or with knowledge that it was likely to, have a particular effect in New York County. We disagree with the Appellate Division that it would have been reasonable for the grand jury to presume that defendants, who neither executed the subject tax returns in New York County nor mailed them there, had knowledge or intent that their Queens County scheme to defraud was likely to have a particular harmful effect on New York County (as opposed to New York City), or, specifically, that their false tax returns were likely to be processed in New York County offices and banks. Most citizens would have no awareness of this circumstance, or of where the City banks. Rather, defendants likely filed their tax returns only with the knowledge and intent that material harm would befall the City or the State in general by their failure to remit the taxes owed.

We note that New York City is unique among municipalities of the State in that it is larger than any of the counties it comprises. Elsewhere, cities, towns and villages exist wholly within single counties, which have jurisdiction under the statute to prosecute crimes having a particular effect on any municipality contained within them. Of course, historically and constitutionally, counties prosecute, not cities (*see* NY Const, art XIII, § 13; *see also* County Law § 700). The People assert that this unique situation creates an anomaly whereby the City may be deprived of its ability to prosecute within its borders certain crimes, of which it is undeniably the victim, involving depletion of its coffers.

That fear is unwarranted. First, particular effect jurisdiction is an alternative ground for venue that is generally invoked

only when jurisdiction does not lie on some other basis—such as the far more common scenario in which evidence exists that conduct establishing an element of the offense has occurred within one (or more) of the five counties of the City (*see* CPL 20.40 [1] [a]). In that event, which would certainly include all larcenies by physical taking of, and all damage to, city property, the county or counties where the conduct occurred would have jurisdiction to prosecute. Second, even in cases involving false filing of income tax returns, in which city taxes—like state taxes—will have been mailed to Albany,[5] jurisdiction will lie in any county where the defendant executed or mailed the return. In any event, whether New York City's situation is unique or anomalous, any perceived gap must be filled by the Legislature. We hold only that, under CPL 20.40 (2) (c), New York County may not assert jurisdiction over all crimes affecting the City on the sole basis that certain city agencies transact their business in offices located in Manhattan. Of course, nothing in our decision today prevents defendants from being prosecuted for their alleged false filings in any county—including another county within New York City—in which venue properly lies (*see* CPL 40.30; *Steingut*, 54 AD2d at 485 n 4).[6]

## III.

■ Finally, we reject defendants' contention that the indictment was facially insufficient for failure to specify the particular effect charged.[7] It is true that in *Steingut*, this Court noted that "the nebulous nature of the impact claimed by the prosecutor . . . [was] best illustrated by the fact that the indictment itself [did] not even allege the effect which the purported crime would have on Kings County. Rather in the most conclusory

---

5. We note that city sales tax returns, by contrast, are filed not in Albany, but in New York County. As the People thus concede, "[t]he only anomaly is City income tax."

6. Contrary to the contention of the dissent, we do not suggest that venue over an offense may properly lie only in a single county, or that particular effect jurisdiction requires a "unique effect" on the county asserting jurisdiction (dissenting op at 42). Multiple counties may certainly have jurisdiction over a given offense on a variety of theories, including particular effect, but only if the evidence establishes the jurisdictional theory proffered by the People.

7. Each count of an indictment must contain a factual statement which, "without allegations of an evidentiary nature . . . asserts facts supporting every element of the offense charged and the . . . defendants' commission thereof with sufficient precision to clearly apprise the . . . defendants of the conduct which is the subject of the accusation" (CPL 200.50 [7] [a]).

fashion, the indictment simply state[d] 'the defendants' conduct had and was likely to have a particular effect on Kings County' " (42 NY2d at 318). The Court concluded that "[c]ertainly the invoking of the extraordinary injured forum jurisdictional statute requires the specification of a more concrete and identifiable injury" (*id.*). Nevertheless, although the indictment here, too, merely asserted without specificity that the charged conduct "had and was likely to have a particular effect upon the County of New York, and was performed with intent that it would and with knowledge that it was likely to have such a particular effect herein," the bill of particulars provided by the People set forth in detail both the prosecution's theory of venue and specific facts in support of their contention (which we reject) that there had been a particular effect on New York County. We thus agree with the Appellate Division that the bill of particulars, in combination with the indictment, sufficiently put defendants on notice of the accusations against them and enabled them to prepare a defense (*see People v Iannone*, 45 NY2d 589, 597-598 [1978]; *People v Grega*, 72 NY2d 489, 498 [1988]; *People v Fitzgerald*, 45 NY2d 574, 579-580 [1978]).[8]

Accordingly, the judgment of the Appellate Division should be reversed, without costs, the petition granted, and respondents prohibited from continuing with the prosecution of counts 26 through 30 of the subject New York County indictment.

READ, J. (dissenting). The Legislature has provided that an offense may be prosecuted in a county when, "[e]ven though none of the conduct constituting such offense may have occurred" there, "[s]uch conduct had, or was likely to have, a particular effect upon such county . . . , and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein" (CPL 20.40 [2] [c]). Further, a "particular effect" is defined as a "materially harmful impact upon the governmental processes or community welfare of" the county seeking to assert jurisdiction (CPL 20.10 [4]). This appeal asks us to decide whether the People established a "particular effect" in New York County with respect to those five counts of the indictment which charged petitioners with evasion of city taxes.

---

**8.** In any event, prohibition does not lie with respect to defendants' challenge to the facial sufficiency of the indictment, in that an insufficiency in the factual allegations of an indictment is not a jurisdictional defect (*see Iannone*, 45 NY2d at 600-601; *People v D'Angelo*, 98 NY2d 733, 734-735 [2002]), and because an adequate remedy at law is available through direct appeal (*see Matter of State of New York v King*, 36 NY2d 59, 62 [1975]).

As recognized in *People v Fea*, "[e]xtraterritorial jurisdiction is to be applied only in those limited circumstances where the out-of-jurisdiction conduct is violative of a statute intended to protect the integrity of the governmental processes or is harmful to the community as a whole" (47 NY2d 70, 76-77 [1979]). Significantly, the majority acknowledges that "[c]learly," petitioners violated a "statute [Penal Law § 175.35] . . . intended to protect the integrity of governmental processes" (majority op at 37). The majority concludes, however, that the necessary "particular effect" is lacking here because it is not enough that New York County is the seat of New York City government (majority op at 35, 39). It is hard to imagine, though, that the Legislature intended to preclude the county in which city government is situated from prosecuting city tax cheats. Surely, evading city taxes affects the "governmental processes or community welfare" of New York County as contemplated by CPL 20.40 (2) (c). Nor can it be said that petitioners (especially petitioner Taub, who had practiced as a tax attorney) should be surprised to face prosecution in New York County. Put differently, by allegedly evading city taxes, he would have had "knowledge that [his tax evasion] was likely to . . . have [a] particular effect" (CPL 20.40 [2] [c]) in the county where his city taxes were required to meet the City's financial obligations and to operate city government; namely, New York County.

Further, the quantifiable revenue loss here is precisely the type of "concrete and identifiable injury" required in *Matter of Steingut v Gold* (42 NY2d 311, 318 [1977]). During a meeting in New York County, a public official offered to use his official position to benefit a corrupt businessman in exchange for the latter's promise to hold a fundraising event for a campaign occurring in Kings County (*see id.* at 313-314). We found venue lacking in Kings County because there was absolutely no evidence that the election had been tainted. That is, the gravamen of the crime charged in *Steingut* was really the quid pro quo, which occurred entirely in Manhattan, and could just as easily have been a promise by the businessman to give the public official tickets to a sporting event, rather than an offer to hold the fundraiser. Here, by contrast, the People adduced evidence before the grand jury of the exact amount of city taxes allegedly evaded by petitioners.

*Fea* is likewise distinguishable from this case. In *Fea*, the People failed to adduce evidence that the defendant's conduct had any actual impact on the county (Bronx) asserting venue:

the defendant loanshark beat a delinquent debtor in Rockland County to assure resumption of payments in Bronx County (*see People v Fea*, 47 NY2d at 73-74). Moreover, the defendant had not been charged with violating a statute designed to protect governmental processes (*see id.* at 76-77).

The main stumbling block for the majority appears to be that revenue loss from city tax evasion affects all of the City's counties (majority op at 38). But we have never before required a particular effect to be a unique effect (*see Steingut*, 42 NY2d at 317). Moreover, while the majority may consider it undesirable for multiple counties to have jurisdiction over a single offense, the Legislature clearly contemplated that eventuality. As the Commission Staff Notes observe, "[i]n general, . . . multiple county jurisdiction is bestowed more liberally than state jurisdiction" (Commission Staff Notes, reprinted following CPL 20.40 in NY Cons Laws Serv, Book 7, at 109).[1]

In addition, the potential for prosecution in multiple jurisdictions does not prejudice a defendant. We have recognized, for example, that under the jury trial guarantee of article I, § 2 of the State Constitution, a criminal defendant has the right "to be tried in the county where the crime was committed *unless* the Legislature has provided otherwise" (*People v Ribowsky*, 77 NY2d 284, 291 [1991] [emphasis added]). Furthermore, a defendant who faces potential prosecution by multiple counties will, in fact, be prosecuted only once: constitutional protections against double jeopardy, as well as the even more protective statutory bars against multiple prosecutions (*see* CPL art 40),

---

1. The majority points out that District Attorneys initially complained that multicounty jurisdiction would apply too broadly, with every county potentially having jurisdiction over bank robberies or burglaries, for example, no matter where committed (majority op at 37). Admittedly, the Commission Staff Notes preceded those complaints. Yet, the injured forum provision was revised, not jettisoned. Further, the revisions designed to address the District Attorneys' comments—especially, defining "particular effect" to necessitate an impact on "governmental processes"—argue for venue here. Nor are the District Attorneys of the other four counties within New York City likely troubled by New York County's exercise of venue over this tax evasion case (*see* Wise, *Funds Recovered in Tax Cases Soften Blows to DAs' Budgets*, NYLJ, May 10, 2004, at 1, cols 4, 5, at 7, col 1 [describing program to offset budget cuts to the five District Attorneys' offices by allowing them to "keep part of the taxes recovered through criminal prosecutions" of "tax cheats and others who commit financial crimes"; and noting that the New York County District Attorney's office "agreed to make . . . its recoveries available to other counties," which allowed the other four District Attorneys—via a transfer of almost $14,000,000 from New York County—to recover current year budget cuts]).

safeguard a defendant against multiple prosecutions for the same offense.[2]

The majority worries that allowing venue here might inspire the New York County District Attorney to assert jurisdiction over cases where, for example, a toll collector embezzles in the Bronx; or a person steals from a city agency in Kings County or vandalizes city property in Queens or Richmond Counties. Perhaps, the majority suggests, the Albany County District Attorney might be tempted to assert jurisdiction over similar cases of theft or vandalism that diminish state revenues or cause state expenditures (majority op at 35-36). Assuming these District Attorneys would desire to expend limited resources on the prosecutions hypothesized by the majority, the statutes at issue here would preclude them from doing so.

The majority's hypothetical examples are crimes that, like tax evasion, are committed against a government and adversely affect government revenues. Unlike offering a false instrument for filing, however, these crimes are not "violative of a statute intended to protect the integrity of the governmental processes" (*People v Fea*, 47 NY2d at 76-77). On the contrary, the majority's hypothetical examples are garden-variety larcenies or criminal mischief. Such thefts and vandalism do not fall within the category of crimes susceptible to extraterritorial jurisdiction.[3]

---

**2.** Petitioners' litigation strategy undercuts any argument that multiple-county jurisdiction works to a criminal defendant's detriment. The net effect of obtaining prohibition here is that petitioners have willingly exposed themselves to prosecution in multiple counties. Specifically, New York County will continue prosecuting the 29 remaining counts of the indictment, and petitioners now face (as they conceded at oral argument) the prospect of prosecution elsewhere on the five tax-related counts.

**3.** The crime charged against petitioners—offering a false instrument for filing in the first degree—occurs when a person "knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, . . . offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation" (Penal Law § 175.35). As the majority acknowledges, this statute is "intended to protect the integrity of governmental processes," as called for in *Fea* to support extraterritorial jurisdiction (*see Fea*, 47 NY2d at 77; majority op at 37). In stark contrast, "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). Criminal mischief of any degree is similarly bereft of any lan-

Further, the majority's hypothetical examples are readily prosecuted in the county where the defendant committed the crime. After all, the geographic location of vandalism or a theft is obvious. Accordingly, venue for the majority's examples would lie in the county of occurrence under CPL 20.40 (1) (a), which provides venue over an offense when a defendant's "[c]onduct . . . within such county [is] sufficient to establish . . . [a]n element of such offense."

Under the majority's reading of the injured forum statutes, however, it has become immeasurably more difficult, if not impossible, to prosecute the evasion of city taxes (except city sales taxes)[4] within the City of New York. Venue will still lie within the county in which the false filing was either executed or mailed (majority op at 39). As this case illustrates, however, it is not always easy to determine years after the fact where a defendant executed or mailed a false tax return. Indeed, according to the People, "an attempt to ground venue in any county on the basis of execution or mailing would be an exercise in futility—even under the 'preponderance of the evidence' standard applicable to issues of county venue." For example, in this case "there was no direct evidence establishing where [petitioner] Taub was when he signed and mailed the returns."

The majority has therefore effectively designated the county where the false instrument was filed as the sole certain venue for prosecuting evaders of New York City income taxes (*see Matter of Sharpton v Turner*, 169 AD2d 947, 950 [3d Dept 1991]).[5] The New York State Department of Taxation and Finance, which administers the New York City resident income tax, requires a taxpayer to file a combined state and city resident income tax return (*see* Tax Law § 1312 [c]; 20 NYCRR 292.1). The Department has directed taxpayers to file these combined returns at an address in Albany County if using the United States Postal Service, or at an address in Ulster County if using

guage protecting governmental processes, and simply calls for an "intent to damage property of another person" (Penal Law § 145.05).

4. Interestingly, the New York State Department of Taxation and Finance, which administers the New York City sales and use tax, has designated a location in New York County as the mailing address for filing all New York State and Local Quarterly Sales and Use Taxes Returns (*see* www.nystax.gov [Form ST-100]).

5. The majority has also encouraged New Yorkers to execute and mail their tax returns from out of state in order to minimize their exposure to prosecution for tax evasion.

a private delivery service (*see* www.nystax.gov [IT-100-I (Instructions), at 6]).

In short, city income tax cheats may be prosecuted in a county where city tax collection functions have been centralized for reasons of administrative and taxpayer convenience; they may not be prosecuted in New York County, which is the seat of city government, even though a shortfall in city revenues adversely affects the city government's ability to meet its financial obligations and deliver city services. In our view, a fair reading of the injured forum statutes would avoid this anomalous result. Accordingly, we respectfully dissent from the majority's conclusion that venue does not lie here, and would affirm the judgment of the Appellate Division denying petitioners' request for prohibition.[6]

Judges G.B. SMITH, CIPARICK, ROSENBLATT and R.S. SMITH concur with Chief Judge KAYE; Judge READ dissents and votes to affirm in a separate opinion in which Judge GRAFFEO concurs.

Judgment reversed, etc.

---

**6.** The majority emphasizes that petitioners still face numerous other charges, some of which carry stiffer penalties than the tax-related counts at issue here (majority op at 32). This strikes us as irrelevant. The People should be allowed to pursue the full case against petitioners. This is surely what was intended by the Commission for Quality of Care, which brought these matters to the New York County District Attorney's attention, and the New York State Department of Taxation and Finance, which recommended that the New York County District Attorney commence a grand jury investigation into petitioners' possible tax crimes and false filings. Further, petitioners might face consecutive sentencing if convicted for falsely reporting income on separate years' returns.